**Leon HAMILTON, Petitioner-Appellant,**

v.

**John C. WATKINS, Warden, Respondent-Appellee.**

**No. 29494.**

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1970.

James A. Harris, Jr., Birmingham, Ala., for petitioner-appellant.

McDonald Gallion, Atty. Gen., Walter S. Turner, Asst. Atty. Gen., State of Ala., Montgomery, Ala., for respondent-appellee.

Before THORNBERRY, AINSWORTH and GOLDBERG, Circuit Judges.

AINSWORTH, Circuit Judge:

Leon Hamilton appeals from the denial by the District Court of his petition for habeas corpus involving an Alabama State Court conviction. We are asked to determine whether a defendant who failed to exercise his right to challenge the systematic exclusion of members of his own race from the jury that tried him, at the time of trial and 36 years thereafter, is deemed to have waived that right. The District Court held that the undue delay constitutes a waiver. We disagree and, therefore, reverse.

Appellant, a Negro, is presently serving a 99-year sentence as a result of a

1932 conviction of robbery, a capital offense, in the Circuit Court for Montgomery County, Alabama, having been found guilty by an all-white jury of robbing a night watchman of his pistol. Thirty-six years later, in January 1968, appellant filed a petition for writ of error coram nobis in the Montgomery County Circuit Court, and raised for the first time the issue that his conviction was unconstitutionally void because of systematic exclusion of Negroes from Montgomery County, Alabama juries and the jury which tried him. His petition was denied, and the Supreme Court of Alabama affirmed.[1] Thereafter, appellant filed a petition for habeas corpus in the United States District Court for the Middle District of Alabama, again alleging, *inter alia,* illegal racial composition of the jury. The District Court denied the petition, observing that "the undue length of time has resulted in the nonavailability of counsel that represented petitioner by reason of death; the judge that presided at the trial is also deceased, as well as the state prosecutor; and the state court record has been lost. Petitioner offers no explanation for the undue delay. Under such circumstances, this Court, without passing on the question of whether the state court has reliably determined the factual issues,[2] is contrained to conclude that this undue delay constitutes a waiver of the issue now presented to this Court by petitioner."

■ It has long been recognized that systematic exclusion of Negroes from criminal juries is a denial of constitutional due process and equal protection of the law, Strauder v. West Virginia,

100 U.S. 303, 25 L.Ed. 664 (1880), and any conviction obtained under such a system cannot stand. Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L. Ed. 84 (1940); Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964).[3] The record in the Alabama coram nobis proceeding unquestionably demonstrates that Negroes were systematically excluded from Montgomery County juries in 1932, the time of appellant's conviction, thus establishing the necessary facts to warrant a finding of denial of constitutional rights. See Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L. Ed.2d 759 (1965); Scott v. Walker, 5 Cir., 1966, 358 F.2d 561.

■ The Clerk of the Circuit Court of Montgomery County testified that to the best of his recollection, the first Negro citizen in Montgomery County was placed on the jury rolls in 1936. Negroes constituted over 50 per cent of the population of that county, however. The Clerk further stated that "going away back to right around 1907 or 1908 or 1909, I think some colored people served on juries then but how many, I don't know, but I know there were a few and then there was a gap there where I don't recall seeing any." In answer to a specific question he did not recall seeing

1. Hamilton v. State, 1969, 283 Ala. 660, 220 So.2d 267.

2. Appellant alleged in his petition for habeas corpus the additional grounds of deprivation of counsel and illegal search and seizure. We need not reach these issues inasmuch as we reverse on the grounds of systematic exclusion of Negroes from the jury lists.

3. See also this Court's decisions in Goins v. Allgood, 1968, 391 F.2d 692; Porter v. Sinclair, 1967, 389 F.2d 277; Mobley

v. United States, 1967, 379 F.2d 768; Brooks v. Beto, 1966, 366 F.2d 1; Rabinowitz v. United States, 1966, 366 F.2d 34; Labat v. Bennett, 1966, 365 F.2d 698; Davis v. Davis, 1966, 361 F. 2d 770; Billingsley v. Clayton, 1966, 359 F.2d 13; Scott v. Walker, 1966, 358 F.2d 561; Cobb v. Balkcom, 1964, 339 F.2d 95; Whitus v. Balkcom, 1964, 333 F.2d 496; United States ex rel. Seals v. Wiman, 1962, 304 F.2d 53, and United States ex rel. Goldsby v. Harpole, 1959, 263 F. 2d 71.

any Negroes on juries from at least five years prior to 1932 (the year of Hamilton's conviction) until 1936 when he placed the name of a Negro on the rolls. This testimony alone established a prima facie case of systematic exclusion, and placed the burden on the state to refute it, cf. Reece v. State of Georgia, 350 U.S. 85, 88, 76 S.Ct. 167, 170, 100 L.Ed. 77 (1955); Arnold v. North Carolina, 376 U.S. 773, 774, 84 S.Ct. 1032, 12 L.Ed. 2d 77 (1964),[4] or to show that there was a true waiver by appellant of his constitutional rights. Whitus v. Balkcom, 5 Cir., 1964, 333 F.2d 496, 507; Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698, 707, 719.

■■ The state made no attempt to rebut the statistical evidence of racial discrimination. Instead, relying solely on Alabama law, appellee argues waiver based on delay of appellant in asserting his rights. The contention is deficient in several respects. Delay alone is no bar to federal habeas relief to correct jurisdictional and constitutional trial errors. Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963); United States v. Smith, 331 U.S. 469, 475, 67 S. Ct. 1330, 1333, 91 L.Ed. 1610 (1947); Commonwealth of Pennsylvania v. Claudy, 350 U.S. 116, 123, 76 S.Ct. 223, 227, 100 L.Ed. 126 (1956); Palmer v. Ashe, 342 U.S. 134, 137, 72 S.Ct. 191, 193, 96 L.Ed. 154 (1952). In *Whitus* and *Labat*, supra; Cobb v. Balkcom, 5 Cir., 1964, 339 F.2d 95; United States ex rel. Seals v. Wiman, 5 Cir., 1962, 304 F.2d 53; and United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F.2d 71, the question of systematic exclusion and failure of accused to timely object thereto were considered. In the cited cases we held there was no waiver, despite noncompliance with the pertinent state rule requiring that a proper objection be made at an early stage of the proceedings.[5] What constitutes a valid waiver, where the right allegedly waived is a federal right, is of course a federal question,

and a state court's finding of waiver does not bar an independent determination of the question in a federal habeas proceeding. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849.

■■ The accepted classic definition of waiver is that stated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461—"an intentional relinquishment or abandonment of a known right or privilege." See also Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849; Pamplin v. Mason, 5 Cir., 1966, 364 F.2d 1, 6. The question of waiver of a constitutional right is not to be taken lightly. Courts must "indulge every reasonable presumption against waiver" and "acquiescence in the loss of fundamental rights" is not to be presumed. Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023. Although loss of the trial record and death of the judge, prosecutor and trial counsel, made it impossible for the district judge to establish with factual certainty whether appellant or counsel affirmatively waived the right to challenge the composition of the jury, any reasonable presumption should have militated against waiver. True waiver must be based on a free option. Whitus v. Balkcom, 5 Cir., 1964, 333 F.2d 496, 502. The option which appellant faced was the option faced by defendants in *Whitus*, 333 F.2d at 499, and *Goldsby*, 263 F.2d at 82, that is, an option to object and thereby incur the prejudice of the jury and the community, or to risk a decision by an all-white jury. We discussed the fiction of such a choice in *Goldsby*, in which we said:

> "[T]he very prejudice which causes the dominant race to exclude members of what it may assume to be an inferior race from jury service operates with multiplied intensity against one who resists such exclusion. Conscientious southern lawyers often reason that the prejudicial effects on their client of raising the issue far out-

---

4. See also the numerous decisions by this Court cited in footnote 3, supra.

5. See also Goins v. Allgood, 5 Cir., 1968, 391 F.2d 692; Scott v. Walker, 5 Cir., 1966, 358 F.2d 561.

weigh any practical protection in the particular case." 263 F.2d at 82. Further, in *Whitus,* we said, "the doctrine of fictitious waiver is unacceptable when the state compels an accused person to choose between an unfairly constituted jury and a prejudiced jury," and that the state could not constitutionally require a defendant "to make a guess and a gamble between two evils." 333 F.2d at 510.

There is nothing before us to indicate that appellant intentionally relinquished or abandoned his right to object to the composition of the jury, and no affirmative proof has been made by the State to this effect. Consequently, there was no valid waiver.

In sum, the State has failed to rebut appellant's prima facie showing that he was tried and convicted by an unconstitutionally composed jury. The judgment therefore is reversed and the cause remanded for further proceedings, necessary or proper. As in *Goldsby, Seals, Whitus* and *Cobb,* the Court expresses the opinion that a period of eight months from and after the entry of this judgment or its final test by certiorari, or otherwise, will allow the State sufficient time to take whatever steps it deems necessary to reindict and retry appellant.

Reversed, rendered and remanded.